ROBERT HUBER, individually, and on behalf of all
others similarly situated,                                                    Case No.:

       Plaintiff,

   v.

JARED HOY, in his official capacity as Secretary
of the Wisconsin Department of Corrections and
GARY BOUGHTON, in his official capacity as
Warden of the Wisconsin Secure Program Facility,

      Defendants.

---

**CLASS ACTION COMPLAINT**
**FOR INJUNCTIVE AND DECLARATORY RELIEF**

---

NOW COMES Plaintiff, Robert Huber, an inmate at Wisconsin Secure Program Facility in Boscobel, Wisconsin, by his attorneys, Cade Law Group LLC, on behalf of himself and all other prisoners similarly situated, as and for his class action complaint, alleges as follows:

### Preliminary Statement

1.    With a simple signing of a new contract, the Wisconsin Department of Corrections (Wis. DOC) effectively has stolen millions of dollars of digital music, books and movies from the prisoners in its custody. After years of selling these digital media files to Wis. DOC prisoners for listening during the time period of their incarceration, Wis. DOC recently implemented a statewide policy forcing prisoners to surrender their tablets, rescinding access to all of their digital music and books, and requiring them to re-purchase their digital media files from Wis. DOC's new contractor. This policy has resulted in the confiscation of the lawfully purchased property of thousands of prisoners, for which Wis.

DOC has not paid just compensation, in violation of the Takings Clause of the Fifth Amendment, and the Due Process Clause of the Fourteenth Amendment. Plaintiff, Robert Huber, brings this class action lawsuit to redress the confiscation of his property and the property of thousands of other prisoners that was unlawfully taken by Wis. DOC pursuant to its unconstitutional policy.

2.      Like many state prison systems, Wis. DOC permits its prisoners to access electronic music files and books. This is not a purely altruistic exercise; Wis. DOC also profits from the availability of electronic media files to prisoners in its custody.

3.      To induce prisoners to purchase files, Wis. DOC explicitly promised that prisoners would own any purchased files forever. The promise had its intended effect, as Huber, individually, has spent in excess of $1,000 for digital media over the last five years. Wis. DOC itself has realized tens of thousands, if not millions of dollars, in commissions on these sales during the same time period.

4.      In or about October 2023, however, the tablet contract that Wis. DOC previously had ended, and Wis. DOC entered into a new contract with ICSolutions, that provided higher profit margins. But to achieve such profits, it is believed that Wis. DOC realized that financial concessions would have to be made. Rather than make those concessions itself, Wis. DOC decided that its prisoners would pay the price.

5.      As such, and for the sole purpose of making its new vendor contract more profitable for both itself and its vendor, Wis. DOC instituted and implemented a formal, statewide policy and practice that mandated the confiscation of all digital media files and content that had been lawfully purchased by current Wis. DOC prisoners, without just compensation, forcing prisoners to actually sign up for a pricy subscription service rather than possession of individual songs Wis. DOC's new vendor. This new policy (the

"Multimedia Tablet Policy") thereby means that any previously purchased content, such as an individual song, game, book or video, is no longer available to Huber or any other inmate.

6.      Plaintiff, Robert Huber, individually and on behalf of all others similarly situated, brings this class action lawsuit against Defendant, Jared Hoy, in his official capacity as Secretary of Wis. DOC, challenging the constitutionality of Wis. DOC's policy and actions under the Takings and Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution, and seeks declaratory and injunctive relief on behalf of all such persons.

## Jurisdiction and Venue

7.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States, and pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to Plaintiff and the putative class by the Constitution and laws of the United States.

8.      Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

9.      Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, as well as Rules 57 and 65 of the Federal Rules of Civil Procedure.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as Defendants do business and are employed in this judicial district and division,

and many of the events or omissions giving rise to the claims occurred in this judicial district and division.

## Parties

11.     Plaintiff, Robert Huber, is an individual currently incarcerated at Wis. DOC's Wisconsin Secure Program Facility, 1101 Morrison Drive, Boscobel, Wisconsin 53805.

12.     Plaintiff has exhausted all available administrative remedies.

13.     Defendant, Jared Hoy, is the Secretary of the Wisconsin Department of Corrections. In this capacity, he is responsible for the overall operation of Wis. DOC, including the operation of Wisconsin's prison facilities, compliance with the U.S. Constitution and federal laws, and the promulgation and enforcement of all Wis. DOC rules, regulations, policies and practices, including, but not limited to, the Multimedia Tablet Program.

14.     Defendant Hoy has statutory authority to implement the relief sought in this Complaint. *See* Wis. Stat. §§ 301.*01 et seq.*

15.     Defendant Gary Boughton is the warden of the Wisconsin Secure Program Facility, and in his capacity as warden, has the authority to implement the relief sought specifically as it relates to Huber at the Wisconsin Secure Program Facility.

16.     The actions of Defendants Hoy, Boughton and their agents were performed under color of state law and constitute state action. All staff members mentioned herein were employees or agents of Defendants and acted within the scope of their employment or agency at all relevant times.

17.     Defendants Hoy and Boughton are sued in their official capacity for injunctive and declaratory relief, and as such may be referred to herein as the "Wisconsin Department of Corrections" or the "Wis. DOC", unless otherwise noted.

## General Factual Allegations

### History of Wis. DOC's Tablet Program

18.     Upon information and belief, the Wis. DOC began selling SCORE tablets[1] supplied by Advanced Technology Group ("ATG") to prisoners in or about 2019 ("Tablet Program") to allow them to listen to music and purchase digital content (the "Digital Music Player Program"). The purported purpose of Wis. DOC's Tablet Program was to provide a secure method by which Wis. DOC prisoners could browse, select, purchase and download digital content to specialized digital media (MP3/MP4) players made explicitly for use by inmates in a correctional setting. Wis. DOC also represented that prisoners would own the content forever.

19.     In 2023, Wis. DOC decided to expand the Program by giving a tablet to every single inmate. Thus, Wis. DOC secures a single vendor, Inmate Calling Solutions (ICSolutions) for the provision and operation of its Tablet Program statewide. Upon information and belief, Wis. DOC invited proposals from qualified vendors that had experience in the provision of large-scale MP3 player Program services in correctional or other security and law enforcement settings.

20.     The purported purpose of the expanded Program was to also allow prisoners to make phone calls, make medical and other requests, and access law library information, etc.  The other real purpose of the expansion is that it cuts down on man hours necessary to have prisoners make phone calls, visit the law library, issue medical and other requests (i.e. "kites") and access the law library.

21.     As part of this bidding process, Wis. DOC purportedly had a competitive bidding process through the National Association of State Procurement Officials for the

---

[1] https://a-t-g.com/offender-management-suite/score-tablet/

provision of a statewide vendor Program for tablets. The history of the tablet Program is identified in a series of memo to prisoners, starting in or about August 2023. Attached hereto as **Exhibit 1** is a true and correct copy of the memos provide by DOC to Wisconsin prisoners identifying the history of the tablet Program and the decision to sign a contract with ICSolutions.

22.     According to an August 2, 2023 memo from Wendy Monfils, the DAI Management and Budget Director:

The DOC's goal for the next tablet contract is for all PIOC to have access to a tablet at no cost, enhancing communication, education, entertainment options while also streamlining operations and improving the utilization of resources. As part of the contracting process, DOC will review the vendor-offered services to determine which best provides these options at a reasonable cost. It is the DOC's intent to keep costs as low as possible.

The DOC is also aware of concerns regarding purchased content on existing tablets. When the current contract started, purchased content was all that was offered, but now most vendors rely solely on subscription-based models. There are licensing and copyright issues restricting content transfer from one vendor's device to another. Please understand that is outside of the control of the DOC and the tablet provider. DOC is looking at options to address the purchased content concern. Please keep in mind when purchasing tablets and content under the current vendor, they will not be supported after your site transitions to the new tablet program and vendor.

23.     So, prior to expanding the program, Wis. DOC was aware that prisoners had purchased content and there could be issues if the content could not be transferred to other tablets.

24.     In or about October 2023, Wis. DOC entered into a contract for the Tablet Program with ICSolutions, which is owned by contract to Keefe Group.[2]

25.     At the time Wis. DOC was entering into the new contract, it still was telling prisoners that Wis. DOC "is looking at options to address the purchased content concern *and no decisions have been made at this time*." Ex. 1, October 26, 2023 memo.

26.     On January 24, 2024, after the contract was signed, Wis. DOC informed

---

[2] *See* www.keefegroup.com ("Keefe Group and its affiliates – Keefe Commissary Network, Access securepak, ATG, ICSolutions and Advanced Technologies Group, is the leading supplier of food products, personal care products, electronics, clothing, technology, telecommunications and software solutions to

prisoners that "ATG purchased content and ATG tablet options continue to be discussed." Ex. 1, January 24, 2024 memo.

27.     In February, 2024, Wis. DOC told prisoners that "Those with an ATG tablet will keep the ATG tablet along with the new ICS tablet until all DAI sites have made the transition. The **ATG will remain active for approximately 45 days** from the last date the tablet was sync'd with ATG. **No decisions have been made regarding purchased content and/or tablet**. Discussions continue. . . This memo serves as another reminder to stop purchasing tablets and adding content from ATG." Ex. 1, February 14, 2024 memo (emphasis added).

28.     The ATG old tablet, for which Huber bought and contains his purchased digital content, is distributed by Advanced Technologies Group LLC, which also owned by Keefe Group. So both tablets are sold by the same parent company, Keefe Group.

29.     The new tablets no longer allow inmates to purchase individual music. In order to listen to music now, they must purchase a monthly subscription service.

30.     Wis. DOC prisoners previously used kiosks to transfer their downloaded digital media files from their cloud-based library to their specific ATG tablet. While Wis. DOC prisoners could only transfer the number of digital media files that would fit within the memory capacity of his or her tablet, there was no limit on the number of credits, files, or songs that an Wis. DOC prisoner could purchase, own, or maintain in their cloud-based library.

31.     In order to utilize the tablet, Wis. DOC prisoners were also required to connect their players to one of the kiosks at their Wis. DOC institution at regular intervals, in order to extend the device's Security Timer. If an Wis. DOC prisoner failed to, or was unable to, connect his or her tablet to a kiosk every thirty (30) days, the tablet would be

automatically disabled, in order to prevent fraudulent use of the device as well as its use outside of Wis. DOC's facilities.

32.     Pursuant to Wis. DOC's rules and regulations, at all relevant times, Wis. DOC prisoners were not permitted to purchase, obtain, or otherwise own any tablet other than the one offered by, and purchased through, the Digital Music Player Program, nor were Wis. DOC prisoners permitted to purchase, obtain, or otherwise own any digital media files other than those offered by, and purchased through, the Digital Music Player Program.

33.     In order to encourage prisoners to purchase tablets, digital media files, and accessories, Wis. DOC published numerous advertisements that were posted in various Wis. DOC institutions and provided to prisoners. These advertisements touted various qualities of the tablets offered by Wis. DOC, including their memory capacity, operating power, and screen size.

34.     Upon information and belief, in addition to touting the qualities of the tablets themselves, at least one widely distributed advertisement, which appeared on the tablet order form itself, also touted various qualities of the Digital Music Player Program, including the following representation:

> Browse, search and preselect songs from updated music catalogs holding millions of song titles representing a wide array of music genres. You have the ability to purchase and listen to unlimited music utilizing the re-download feature free of charge. <u>Once music is purchased, you'll always own it</u>! (emphasis supplied).

35.     This representation was made by Wis. DOC to Plaintiff, and all participating Wis. DOC prisoners, to induce them into purchasing digital media files.

36.     This advertisement also included information about restrictions that Wis. DOC placed on the purchase or use of tablets and/or files purchased through the Digital

Music Player Program, pursuant to its internal rules and regulations. Notably, the same advertisement that promised participating Wis. DOC prisoners that they would "always own" the digital media files they had purchased listed only one restriction – that each Wis. DOC prisoner was only permitted to possess one tablet at any given time.

37.     Similarly, Wis. DOC repeatedly represented to prisoners that they were permitted to delete and re-order digital media files that they had purchased from the cloud-based library, at any time and at no additional cost. In explaining this system, the user guide that accompanied many of the tablets emphasized this re-ordering capability, and explicitly stated that prisoners would never have to purchase the same song or book twice:

> You can delete and Re-Order songs as often as you want. You will never be charged for a song that is ordered from the Re-Order Manager. After all, you have already paid for the song once; we don't think you should ever have to pay for it again.

38.     Upon information and belief, none of the materials provided to Wis. DOC prisoners regarding the operation of the Tablet Program suggested or informed participating Wis. DOC prisoners that their digital media file purchases would only be available for use during the span of Wis. DOC's contract with ATG, including, but not limited to, notices, advertisements, order forms, and/or user guides.

39.     Similarly, upon information and belief, none of Wis. DOC's internal rules or regulations ever suggested or informed participating Wis. DOC prisoners that their digital media file purchases would only be available for use during the span of Wis. DOC's contract with ATG. In fact, even after the new contract with ICSolutions was signed, Wis. DOC was still selling the old ATG tablets.

40.     Based in no small part on the belief by Wis. DOC prisoners that any purchases they made through the Tablet Program could be accessed at least for the duration of their incarceration with Wis. DOC, it is believed that the Tablet Program was a

financial success for Wis. DOC.

41.     More specifically, upon information and belief, Wis. DOC receives a percentage of the sales of monthly music streaming, books, videos, etc. from ICSolutions and received similar funding with the ATG contract, .

42.     Wis. DOC prisoners purchased these electronic media files specifically to listen to them in prison. Wis. DOC prisoners do not have direct Internet access, and many do not have ready access to AM/FM radios. Many do not have jobs or meaningful work assignments. Prison can be a stressful environment, and many prisoners have large amounts of idle time. Wis. DOC prisoners purchased these songs for their use in prison, to alleviate some of the stress and difficulties that come with prison life.

Wis. DOC's Transition to the Current Multimedia Tablet Program

43.     In October 2023, Wis. DOC entered into the new contract, which allows Wis. DOC to realize even higher profit margins.

44.     In order to implement its new contract, Wis. DOC ended the Tablet Program and began to transition to the current Multimedia Tablet Program by giving every inmate a tablet, for which they must pay for various services out of their personal funds.

45.     However, the new Multimedia Tablet Program came with a significant downside for all prisoners who had participated in the previous program: they would be required to surrender their tablets to Wis. DOC and lose access to all of their digital music and books, regardless of whether they chose to participate in the Multimedia Tablet Program or not.

46.     In order to implement the Multimedia Tablet Program, Wis. DOC is cutting off access to the ATG Tablets, as noted in Exhibit 1, preventing them from downloading their own previously purchased music and books. Essentially, the ATG tablets are nothing but

expensive paperweights.

47.     Then, pursuant to the Multimedia Tablet Program, Wis. DOC has forced, and is forcing, all Wis. DOC prisoners who had participated in the previous Tablet Program to surrender their lawfully purchased tablets—including all of the digital media files on the player—to Wis. DOC, on the date that they receive a new tablet under the Multimedia Tablet Program.

48.     Wis. DOC has not decided what prisoners will be able to do with the ATG tablets once all of the ICSolutions tablets are passed out. But it is clear that prisoners will not be able to access the content on the ATG Tablets.

49.     Perhaps Wis. DOC will let the prisoners mail the ATG Tablets to loved ones on the outside.

50.     The option to send the player and/or files to someone outside of prison does not cure the problem. As noted above, Wis. DOC prisoners purchased the digital players and music to listen to them and enjoy them *while in prison*—not at some unspecified time in the future. Further, many Wis. DOC prisoners are serving life sentences (or a term so long it is the functional equivalent of life), or have no family or friends on the outside to whom to send the tablet. For these prisoners in particular, the option to mail out the player is completely illusory.

51.     Moreover, upon information and belief, for digital music files that were stored in prisoners' cloud-based library but not on their tablet, there was no option to retrieve them and send them to someone outside of prison; these files were simply gone forever.

52.     Despite previous assurances from Wis. DOC that prisoners would "always own" the digital media files they had purchased under the previous program, Wis. DOC did not permit prisoners to transfer *any* of the digital media files that they had purchased under

the previous Program to the new multimedia tablets, regardless of whether such digital media files were contained on the prisoner's tablet itself or in the prisoner's cloud-based library.

53.     If prisoners want to listen to the digital music and books they had under the previous program, they are required to re-purchase them under the current Multimedia Tablet Program, which includes an expensive monthly music streaming service.

54.     Prisoners are being forced to surrender their tablets, and lose access to their digital files as described above, regardless of the length of their sentence, or whether they have identifiable family members to whom to potentially send their property.

55.     Wis. DOC has offered no compensation for the taking of these tablet and digital files.

56.     Since the implementation of the Multimedia Tablet Program, Wis. DOC prisoners have written dozens of grievances and administrative appeals complaining about the arbitrary confiscation of their property without compensation. Wis. DOC has denied all such grievances and appeals.

57.     Despite these acknowledgements, Wis. DOC has denied all such grievances and appeals and continues to move forward with the Multimedia Tablet Program without modification.

58.     Moreover, Wis. DOC has even explicitly admitted that the confiscation of lawfully purchased property without compensation was done to allow Wis. DOC and its new vendor to realize additional profits, stating in several grievance responses that the confiscation of all prisoners' digital media files is "necessary" because "the download of content purchased from one vendor to another vendor's device would negate the new vendor's ability to be compensated for their services."

59.     In addition, Wis. DOC's standard grievance response language simply tells prisoners that their loss of property will be good for them in the long run, stating, "It is unfortunate that the music cannot be transferred, however, we hope that overtime [sic] the family and the inmate will see the added value of the new program."

*Factual Allegations Regarding Plaintiff Robert Huber*

60.     Plaintiff, Robert Huber, is a current Wis. DOC prisoner who has been, and continues to be, deprived of his constitutional rights as a result of Wis. DOC's Multimedia Tablet Program.

61.     In 2019, while incarcerated at Wis. DOC's Secure Program Facility in Boscobel, Wisconsin, Mr. Huber purchased a tablet through Wis. DOC's Tablet Program for $139.95.

62.     Having viewed Wis. DOC's advertisements for its Tablet Program, Mr. Huber believed that he would "always own" any digital media files purchased by him through the Tablet Program and for use with his tablet.

63.     Relying on this belief, Mr. Huber subsequently purchased in excess of $1,000 on the purchase of these digital media files, excluding additional costs for the tablet, as well as ear buds and other necessary accessories. Much of the music content purchased by Huber is unique and hard to find music, which is not available on the streaming service. Moreover, the music streaming service plays types of songs by artists, not specific songs.

64.     Then, in 2023, despite assurances from Wis. DOC that he would "always own" the digital media files he had purchased, Wis. DOC informed Mr. Huber not only that it was terminating the Tablet Program and replacing it with the Multimedia Tablet Program, but also that he would not be permitted to retain any of his digital media files, regardless of

whether those files were contained on his tablet or in his cloud-based library and even if he chose to purchase a tablet through Wis. DOC's new program, and would instead be forced to surrender his property to Wis. DOC's custody.

65. Wis. DOC informed Mr. Huber that he would now only be permitted to keep the tablet and/or files he had purchased through the Tablet Program until the earlier of a) his receipt of a multimedia tablet through the Multimedia Tablet Program, or b) when every prisoner has issued tablets.

66. Mr. Huber does not have anyone to send his old tablet to, and he has lost the right to use his old tablet.

67. As such, and with no other options at his disposal, May 2024, Mr. Huber surrendered his tablet and all of his digital media files to Wis. DOC's custody, pursuant to the Multimedia Tablet Program. While Mr. Huber accepted the new multimedia tablet at no cost, he was completely deprived of the use and enjoyment of all of his lawfully purchased songs and digital media files. The money he had invested in his digital media files has been effectively stolen from him.

**Class Action Allegations**

68. Plaintiff brings this action as a class action, pursuant to Rule 23(a) and 23(b)(2), Federal Rules of Civil Procedure, for declaratory and injunctive relief on behalf of himself and a class of all persons similarly situated.

69. Plaintiff brings this class action pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and is a member of, and seeks to represent, two classes of persons and entities.

70. The "Plaintiff Class") is defined as:

"All Wis. DOC prisoners whose digital media files and other purchased content were taken, or will be taken, pursuant to the Multimedia Tablet Program."

71.     The Tablet Class is defined as:

"All Wis. DOC prisoners who previously purchased ATG tablets."

72.     <u>Class Size (Fed. R. Civ. P. 23(a)(1))</u>: Plaintiff avers that the proposed classes are in excess of 50 persons. Boths class size are so numerous that joinder of all members is impracticable.

73.     <u>Commonality (Fed. R. Civ. P. 23(a)(2))</u>: There are questions of law and fact common to all members of the Plaintiff Class and the Tablet Class. Common material questions of fact and law include, but are not limited to, the following:

a.     the scope and nature of Defendants' Multimedia Tablet Program;
b.     whether Defendants offered just compensation to inmates whose property was confiscated pursuant to the Multimedia Tablet Program;
c.     whether the implementation and enforcement of the Multimedia Tablet Program violates the Takings Clause of the Fifth Amendment to the U.S. Constitution;
d.     whether the implementation and enforcement of the Multimedia Tablet Program violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution;
e.     whether Plaintiff and the other members of the class are entitled to declaratory relief; and
f.     whether Plaintiff and the other members of the class are entitled to injunctive relief.

74.     <u>Typicality (Fed. R. Civ. P. 23(a)(3))</u>: The claims of the named Plaintiff are typical of the claims of all members of both classes. The named Plaintiff has suffered injuries similar in kind and degree to the injuries suffered by the members of both classes. The Defendants have acted the same with respect to the named Plaintiff and all class members. The named Plaintiff makes the same claims and seeks the same relief for himself and for all class members.

75.     <u>Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4))</u>: The named Plaintiff will fairly and adequately represent and protect the interests of both sets of class

members. Plaintiff is committed to this cause, will litigate it vigorously, and is aware of the fiduciary duties of a class representative. Plaintiff's interests are consistent with and not antagonistic to the interests of the other class members. Plaintiff has a strong personal interest in the outcome of this action and has retained experienced class counsel to represent him and the other class members.

76.    Class Counsel is experienced in civil rights and class action litigation on behalf of prisoners and has successfully litigated such claims.

77.    Fed. R. Civ. P. 23(b)(2): Defendants have  acted or refused to act on grounds generally applicable to the members of the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## CAUSES OF ACTION

### COUNT 1

### Takings Clause of the Fifth Amendment to the U.S. Constitution
**42 U.S.C. § 1983**

78.    Huber restates and realleges the allegations contained in the preceding paragraphs as if set forth herein.

79.    Plaintiff's claim for relief on this Count One is predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and the laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

80.    Plaintiff and the putative class have a constitutionally protected and fundamental right to property in their purchased digital media files.

81.    Pursuant to the Takings Clause of the Fifth Amendment to the U.S.

Constitution, made applicable to the states and their agencies through the Fourteenth Amendment to the U.S. Constitution, private property shall not be taken without just compensation.

82.     Through the implementation of the Multimedia Tablet Program, Defendants Hoy and Boughton, on behalf of the Wis. DOC, have violated the Takings Clause by taking the private property of prisoners who purchased digital media files without just compensation.

83.     The implementation and enforcement of the Multimedia Tablet Program is facially unconstitutional under the Takings Clause, as it requires the taking of private property of prisoners without just compensation.

84.     Plaintiff and the putative class purchased digital media files through the Tablet Program with funds from their inmate accounts, and at the time of purchase the digital media files were authorized property for Plaintiff and the putative class to possess.

85.     Defendants' Multimedia Tablet Program has invaded and interfered with Plaintiff's and the putative class's legally protected property interests.

86.     Defendants have deprived Plaintiff and the putative class of their possessory right, use, and enjoyment of the digital media files they purchased through the Tablet Program, without just compensation, through the implementation and enforcement of its Multimedia Tablet Program.

87.     The Multimedia Tablet Program constituted a direct government appropriation of private property.

88.     Defendants' Multimedia Tablet Program has or will result in the permanent deprivation of Plaintiff and the putative class's possessory rights, use, and enjoyment of the digital media files they purchased through the Tablet Program.

89.     Defendants' Multimedia Tablet Program was not implemented to address any improper use of the digital media files purchased through the Tablet Program by Plaintiff and the putative class, and was not implemented to address any security concern.

90.     Plaintiff and the putative class are entitled to and have not been provided with just compensation for the taking.

91.     Plaintiff and the putative class have no adequate state court remedies to redress this taking.

92.     As a direct and proximate cause of Defendants' official policy and actions, Plaintiff and the putative have suffered, and will continue to suffer, from violation of their rights under the Takings Clause of the Fifth Amendment. These harms will continue unless enjoined by this Court.

**COUNT 2**

**<u>Fourteenth Amendment to the U.S. Constitution: Substantive Due Process</u>**
**42 U.S.C. §1983**

93.     Huber restates and realleges the allegations contained in the preceding paragraphs as if set forth herein.

94.     Plaintiff's claim for relief on this Count Two is predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured by the Fourteenth Amendments to the U.S. Constitution and the laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

95.     Plaintiff and the putative class have a constitutionally protected and fundamental right to property in their purchased digital media files.

96.     Plaintiff and the putative class purchased digital media files through the

Tablet Program with funds from their inmate accounts, and at the time of purchase the digital media files were authorized property for Plaintiff and the putative class to possess. Accordingly, Plaintiff and the putative class have a right to the digital media files through the Tablet Program.

97. Defendants have deprived Plaintiff and the putative class of their possessory right, use, and enjoyment of the digital media files they purchased through the Tablet Program.

98. Defendants' Multimedia Tablet Program was not implemented to address any improper use of the digital media files purchased through the Tablet Program by Plaintiff and the putative class.

99. Defendants' implementation and enforcement of the Multimedia Tablet Program was, and is, arbitrary and irrational under color of law.

100. The Multimedia Tablet Program was implemented in Defendants' legislative capacity, as the Program has broad-ranging impacts for large segments of Wis. DOC population, rather than being directed at a particular person.

101. The Multimedia Tablet Program is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, has no rational basis, was undertaken for an improper motive, and is therefore an invalid exercise of the police power.

102. The Multimedia Tablet Program is facially unconstitutional under the substantive Due Process Clause of the Fourteenth Amendment.

103. The deprivation of Plaintiff's and the putative class's property was the result of an abuse of governmental power.

104. These actions are essentially theft and breach of contract, and as such,

shock the conscience.

## Count 3

### Conversion

105.　　Huber restates and realleges the allegations contained in the preceding paragraphs as if set forth herein.

106.　　Plaintiff and the putative tablet class is the rightful owner of his ATG tablet, as he purchased it. He also is the owner of certain media content.

107.　　Defendants, among other things, have taken the ATG Tablet and his digital content from Plaintiff and the putative tablet class without notification to and approval from Huber.

108.　　Defendants possessing of Huber and the putative tablet classes' property for other than a proper purpose has seriously interfered, and continues to seriously interfere, with Huber's and the classes' ownership interests as alleged.

109.　　Huber and the putative tablet class has been damaged by Defendants unlawful dispossession of their property for other than a proper purpose in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demands judgment in his favor and against Defendants and requests an order:

A.　　certifying this action as a class action pursuant to Rule 23(b)(2), appointing Plaintiff Robert Huber as the representative of the members of the class defined above, and appointing the undersigned as counsel for the members of the class;

B.　　finding and declaring that Defendants have violated the Takings Clause of the Fifth Amendment to the U.S. Constitution through its implementation of the Multimedia

Tablet Program;

C.      finding and declaring that Defendants have  violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution by violating the substantive due process rights of Plaintiff and the putative class through its implementation of the Multimedia Tablet Program;

D.      granting Plaintiff and the putative class preliminary and permanent injunctive relief that will restore their access while in prison to the digital media files they purchased through the Tablet Program;

E.      awarding Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and,

F.      granting such other and further relief as this Court deems appropriate.

Dated this 15th day of June, 2024.

**CADE LAW GROUP LLC**

By: *s/Nathaniel Cade, Jr.*
    Nathaniel Cade, Jr., SBN 1028115
    Antonique C. Williams, SBN 1051850
    Annalisa Pusick, SBN 1116379
    Madison Bedder, SBN 1121996
    P.O. Box 170887
    Milwaukee, WI 53217
    (414) 255-3802 (phone)
    (414) 255-3804 (fax)
    nate@cade-law.com
    antonique@cade-law.com
    annalisa@cade-law.com
    madison@cade-law.com

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS MATTER
ON ALL ISSUES SO TRIABLE.**