IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT HUBER,

                            Plaintiff,                                OPINION AND ORDER

        v.                                                                    24-cv-404-wmc

JARED HOY AND GARY BOUGHTON,

                            Defendants.

Through his counsel, plaintiff Robert Huber, who is incarcerated at the Wisconsin Secure Program Facility (WSPF), seeks declaratory and injunctive relief on behalf of himself and other similarly-situated inmates against Wisconsin Department of Corrections ("DOC") Secretary Jared Hoy and WSPF Warden Gary Boughton, both in their official capacities, claiming deprivation to his previously-purchased electronic devices and digital media files under a 2023 DOC policy, in violation of the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and Wisconsin conversion law.  Under 28 U.S.C. § 1915A, the court must dismiss any portion of a prisoner's complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant.  In other words, plaintiff must allege enough facts to show that he is plausibly entitled to the relief sought.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  Applying this standard, the court will allow plaintiff to proceed on a takings claim against defendants in their official capacities for the reasons explained below.[1]  However, plaintiff's substantive due process claim will be dismissed without prejudice for plaintiff's failure to pursue

---

[1] While "neither a State nor its officials acting in their official capacities are 'persons' under § 1983," an "official-capacity action[] for prospective relief [is] not treated as [an] action[] against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 and n. 10 (1989); *see also Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023) (citing *Reed v. Goertz*, 598 U.S. 230 (2023)) ("A narrow exception to sovereign immunity . . . 'allows suits . . . for declaratory or injunctive relief against state officers in their official capacities.'").

available state law remedies, and the state law conversion claim will be dismissed with prejudice as barred by sovereign immunity under the Eleventh Amendment.

## ALLEGATIONS OF FACT[2]

Plaintiff Robert Huber is incarcerated at WSPF, where defendant Boughton is the Warden, while defendant Hoy is DOC's Secretary to whom Boughton ultimately reports.  In 2019, the DOC began selling electronic "SCORE" tablets supplied by Advanced Technology Group ("ATG") to prisoners, which provide a secure method to listen to music and purchase digital content.  More specifically, the tablets allowed prisoners to browse, select, purchase, and download digital content to specialized digital media players (MP3/MP4) expressly made for use by inmates in a correctional setting.  Indeed, DOC encouraged inmates to purchase ATG tablets and media files through advertising touting the tablet's qualities and promising inmates that "once music is purchased, you'll always own it."  (Dkt. #1, at ¶ 34.)  At the same time, DOC rules and regulations prohibited inmates to purchase any other type of tablet or digital music files.

In reliance on this DOC's apparent endorsement, plaintiff purchased an ATG tablet for $139.95 in 2019, and spent an additional $1,000 on digital content and tablet accessories. Plaintiff and other DOC inmates also used kiosks in the prison to transfer their downloaded digital media files from their cloud-based libraries to their ATG tablets.  While ATG tablets had limited memory for digital media files, there was no limit on the number of credits, files, or songs that an inmate could purchase, own, or maintain in their cloud-based library.

---

[2] Plaintiff alleges the following facts in his complaint, which the court accepts as true for purposes of § 1915A screening.

In 2023, DOC decided to expand this program further by giving a tablet to every DOC inmate in the state, albeit through a different, single vendor called Inmate Calling Solutions ("ICS"), with the stated purpose of allowing inmates to easily make phone calls, request medical and other assistance, and access information from the law library. Both ATG and ICS are owned by the same parent company, Keefe Group.

While DOC was discussing the new contract with ICS in October 2023, it released a memorandum informing inmates that it was looking at options to address the media content that they had previously purchased through ATG. Even after executing a contract with ICS, DOC informed inmates on January 24, 2024, that it was continuing to discuss what to do with old ATG tablets and purchased content. Moreover, DOC continued to sell ATG tablets to inmates throughout this period.

However, on February 14, 2024, DOC issued another memorandum to inmates, stating that:

> Those with an ATG tablet will keep the ATG tablet along with the new ICS tablet until all DAI sites have made the transition. The *ATG will remain active for approximately 45 days* from the last date the tablet was sync'd with ATG. No decisions have been made regarding purchased content and/or tablet. Discussions continue. . . This memo serves as another reminder to stop purchasing tablets and adding content from ATG.

(Dkt. #1-1 (emphasis added).) Moreover, because the new ICS tablets do not allow inmates to purchase individual music, they must now purchase a monthly subscription service to listen to music. Worse, the DOC did not permit inmates to transfer any of their digital media files already purchased under the ATG program to the new ICS multimedia tablets, regardless of whether the digital media files were stored on the ATG tablet itself or in a cloud-based library. Further, as it had with ATG, DOC receives a percentage of ICS sales of monthly music streaming, books, and videos.

3

Finally, under the new DOC policy, inmates like plaintiff, who had participated in the ATG tablet program, are required to surrender their ATG tablets to DOC and will lose all access to their previously-purchased, digital music and books, regardless of whether they chose to participate in the new multimedia tablet program.[3]  DOC has offered no compensation to inmates for taking away access to their ATG tablets and digital files, and it has denied inmate grievances and appeals concerning the confiscation of this property, stating merely that:  "It is unfortunate that the music cannot be transferred, however, we hope that [over time] the family and the inmate will see the added value of the new program."  (Dkt. #1, at ¶ 59.)

OPINION

As mentioned already, plaintiff claims that DOC's adoption of a new multimedia tablet program through ICS violates the Takings Clause of the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment, and state conversion law.  He seeks to represent two classes of DOC prisoners in obtaining declaratory and injunctive relief:  (1) those whose digital media files and other purchased content were taken or will be taken pursuant to the Multimedia Tablet Program; and (2) those who previously purchased ATG tablets.  (*See* dkt. #1, at ¶¶ 70-71.)  While the doctrine of sovereign immunity and the state remedy exhaustion requirement prevents him from proceeding with his due process and conversion claims, neither prevents him from proceeding with his takings claim, at least at this early pleading stage.

---

[3] To date, DOC has not decided what to do with the confiscated ATG tablets after all of the ICS tablets are distributed, but at minimum, inmates like plaintiff will not be able to use them or access their content until released from prison.

I.        **Takings Clause Claim**

The Takings Clause of the Fifth Amendment prohibits the government from taking a person's private property for public use without just compensation. *Barbian v. Panagis*, 694 F.2d 476, 482 & n.4 (7th Cir. 1982). "The Takings Clause has been held to apply to two types of governmental action:  first, the taking of physical possession or control of an interest in property for some public purpose; and second, regulations prohibiting private uses." *Lee v. City of Chi.*, 330 F.3d 456, 474 (7th Cir. 2003) (Wood, J., concurring).  The first is a "categorical taking" that would not apply in this case because plaintiff does not allege that his digital media was taken for public use. *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321-23 (2002) (describing differences between categorical and regulatory takings); *Paalan v. United States*, 51 Fed. Cl. 738, 751 (Fed. Cl. 2002) ("The fact that the Government legally may have taken plaintiff's property as evidence, but then lost it, does not state a claim for a taking, because the Government thereby does not take property for public use."); *Lee v. St. Joseph Cnty. Jail*, No. 3:20-CV-66, 2021 WL 1253959, at *1 (N.D. Ind. Apr. 5, 2021) (finding similar with respect to money taken from prisoner's account for phone card he did not ask for).

Nonetheless, plaintiff's allegations that DOC issued and enforced a policy restricting his and other inmates' private use of their previously-purchased ATG tablets and digital media are sufficient at this early stage to state a *regulatory* taking claim under the Fifth Amendment. *See Tahoe-Sierra*, 535 U.S. at 317 n.17 and 323 (regulatory taking "is not self-evident" and "necessarily entails complex factual assessments of the purposes and economic effects of government actions").  Even so, the Eleventh Amendment generally prohibits individuals from suing a state, state agency, or state official in federal court. *Vargo v. Casey*, No. 20-cv-1109, 2024 WL 4794692, at *7 (W.D. Wis. Nov. 14, 2024) (citing *Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010)).  However, the United

States Supreme Court recognized an exception to sovereign immunity in *Ex parte Young*, 209

U.S. 123 (1908), for suits against a state official seeking "prospective relief against an ongoing

violation of federal law." *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 520-21 (7th

Cir. 2021). Here, plaintiff alleges that the DOC will continue to violate his Fifth Amendment

rights, and the rights of the other putative class members, unless enjoined by this court.

Therefore, plaintiff's claim for prospective, injunctive relief appears to fall within the *Ex parte*

*Young* exception. *See Vargo*, 2024 WL 4794692, at *7 (finding similar).

> Until recently, the Supreme Court had also long held that property owners must seek

just compensation under state law in state court before bringing a federal takings claim under

§ 1983. *See Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473

U.S. 172 (1985). However, the Court eliminated a state court exhaustion requirement in *Knick*

*v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019), concluding that a plaintiff has "an

actionable Fifth Amendment takings claim when the government takes his property without

paying for it," regardless of the availability of post-taking remedies. *Vargo v. Barca*, No. 20-cv-

1109, 2023 WL 6065599, at *4 (W.D. Wis. Sept. 18, 2023). Of course, the Court left

untouched *Williamson County*'s alternative holding that plaintiffs may challenge only "final"

government decisions, *see Knick*, 588 U.S. at 188, while since clarifying that this "finality

requirement is relatively modest," as "[a]ll a plaintiff must show is that there [is] no question

. . . about how the regulations at issue apply to the particular [property] in question." *Pakdel*

*v. City & Cnty. of San Francisco, California*, 594 U.S. 474, 478 (2021).

> Therefore, the practical implication of *Knick* is that plaintiff can bring a federal takings

claim in federal court without the need to pursue his state law remedies in state court, as long

as the finality requirement is satisfied. Here, plaintiff alleges exactly that: DOC has taken,

and continues to hold, his and other inmates' property without compensation. Even though

the DOC had not yet decided what to do with the old ATG tablets or the previously-purchased digital media files at the time plaintiff filed his complaint, leaving open questions of fact about the extent of the multimedia policy's "taking," plaintiff has sufficiently alleged that the policy applies to his property. Moreover, a determination regarding the finality requirement is more appropriately resolved at a later stage in this lawsuit. Accordingly, plaintiff will be allowed leave to proceed on a Fifth Amendment takings claim for prospective injunctive relief against defendants in their official capacities.

## II.   Substantive Due Process Claim

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In general, "[s]ubstantive due process protects against only the most egregious and outrageous government action." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019); *see also Catinella v. Cnty. of Cook, Ill.*, 881 F.3d 514, 519 (7th Cir. 2018) (explaining that substantive component of due-process guarantee is limited to conduct that "shocks the conscience"). In cases like this one, however, where a practice or policy does not encroach on a fundamental right, substantive due process requires only that the practice or policy be "'rationally related to a legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational.'" *Indiana Land Tr. #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 699 (7th Cir. 2024) (quoting *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008)). Further, unlike with his takings claim,[4] any recourse that plaintiff seeks for an objectionable property decision under the Due Process Clause "must be made to state rather than federal court." *Id*. at 699-700 (internal citations omitted); *see also*

---

[4] *Knick* only applies to takings claims.

7

*Zinermon v. Burch*, 494 U.S. 113, 128-32 (1990) (neither negligent nor intentional deprivation of property violate owner's right to due process if state law provides adequate post-deprivation remedy); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Therefore, plaintiff cannot bring his due process claim in this action without first seeking recourse under state law. *See Rudebush v. Lenski*, No. 14-cv-169, 2014 WL 5817330, at *2 (W.D. Wis. Nov. 10, 2014) (finding same where defendants allegedly withheld plaintiff's books without hearing or other recourse).

While plaintiff generally alleges that he has no adequate state court remedies to redress the taking (dkt. #1, at ¶ 91), he neither alleges why that is the case nor alleges that he has been denied recourse in state court. To the contrary, Wisconsin provides tort remedies to individuals whose property has been converted or damaged by another. *E.g.*, Wis. Stat. § 893.35 (action to recover personal property); § 893.51 (action to recover damages for wrongful taking of personal property); and § 893.53 (action to recover damages for an injury to the character or rights of another, not arising on contract). In addition, plaintiff may seek declaratory and injunctive relief with respect to a Wisconsin state "[a]dministrative decision which adversely affect[s] the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form." Wis. Stat. § 227.52; *see also Lister v. Bd. of Regents of Univ. Wisconsin Sys.*, 72 Wis. 2d 282, 303, 240 N.W.2d 610, 623 (1976) ("[D]eclaratory judgment procedure is particularly well-suited (in cases where such relief is otherwise appropriate) for resolving controversies as to the constitutionality or proper construction and application of statutory provisions."); *City of Kenosha v. State*, 35 Wis. 2d 317, 323, 151 N.W.2d 36 (1967) ("[C]ourts may entertain suits to enjoin state officers and state agencies from acting beyond their constitutional or jurisdictional authority."); *Loki Fiontar, LLC v. Dep't of Nat. Res.*, 2024 WI App 74, ¶ 27, 15 N.W.3d 512 (discussing constitutional claims for declaratory judgment and injunctive relief that are not barred by sovereign immunity).

Similarly, a writ of mandamus "may be used to compel a public officer to perform a duty that he or she is legally bound to perform." *State ex rel. Greer v. Stahowiak*, 2005 WI App 219, ¶ 6, 287 Wis. 2d 795, 800, 706 N.W.2d 161, 163. While plaintiff may prefer to bring a class action in federal court under § 1983, "a state remedy must 'offer [only] meaningful redress for the particular injury suffered by the plaintiff'"; it "need not mirror the relief available under § 1983 to be adequate." *Sherwood v. Marchiori*, 76 F.4th 688, 696-97 (7th Cir. 2023) (quoting *Simpson v. Brown County*, 860 F.3d 1001, 1010 (7th Cir. 2017)). Plaintiff "cannot circumvent the adequacy of [] a state remedy just because [he] chose to bring [his] claims on a class-wide basis in federal court." *Id*. at 697.

Accordingly, the court will dismiss plaintiff's substantive due process claim without prejudice, leaving him to pursue whatever procedures may still be available under Wisconsin law or file an amended complaint illustrating how those remedies are inadequate or nonexistent. *See Calderone v. City of Chicago*, 979 F.3d 1156, 1166-67 (7th Cir. 2020) (Plaintiff must "either take advantage of the available post-deprivation remedies or illustrate how exactly those remedies are inadequate."); *Sorrentino v Godinez*, 777 F.3d 410, 414 (7th Cir. 2015) (directing dismissal without prejudice where plaintiff did not first seek compensation in state tribunal). Should plaintiff choose to pursue the latter course, he must to file an amended complaint to correct this deficiency on or before May 29, 2025.

## III.    Conversion Claim

Finally, plaintiff contends that defendants are liable for conversion under state law for the deprivation of his and the putative class members' property, entitling them to monetary damages in an amount to be determined at trial. However, the Supreme Court held in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102-04 and 121 (1984), that the

Eleventh Amendment bars any claim[5] based on state law against a state or against a state officer, even one for prospective relief, subject to exceptions not applicable here. *See also Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020) ("Given the Eleventh Amendment and principles of sovereign immunity, . . . a federal court cannot issue relief against a state under state law."); *Vargo*, 2024 WL 4794692, at *10 (same). Accordingly, plaintiff will be denied leave to proceed on a conversion claim because it is barred by the doctrine of sovereign immunity.

## ORDER

IT IS ORDERED that:

1) Plaintiff Robert Huber's motion for screening (dkt. #16) is GRANTED.

2) Plaintiff is GRANTED leave to proceed, on behalf of himself and other similarly-situated DOC inmates, on a Fifth Amendment takings claim against defendants Jared Hoy and Gary Boughton in their official capacities, as provided above.

3) Plaintiff is DENIED leave to proceed on any other claim.

4) If plaintiff chooses to file an amended complaint to address the deficiencies discussed in this order regarding his substantive due process claim, he must do so on or before **May 29, 2025**.

Entered this 8th day of May, 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

---

[5] Specifically, a "federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Pennhurst*, 465 U.S. at 121.